## UNCLE SAM OIL CO. v. UNION PETROLEUM CO.

No. 11052—Opinion Filed May 8, 1923.

Rehearing Denied July 3, 1923.

(Syllabus.)

1. **Fixtures—Landlord and Tenant — Removability of Improvements—Intent of Parties.**

Where a contract for lease of real estate is entered into between a landowner, lessor, and a lessee, and provision is made in it for additions or improvements to be placed upon the land, and where it appears that the parties had and expressed an intention as to the removability of such improvements or additions, then the intention of the parties constitutes the test as to whether such improvements or additions are removable.

2. **Same—Evidence of Intent.**

In such case the clear intent of the parties may be ascertained from all the circumstances surrounding the enjoyment thereof, as well as from the express provisions of the contract itself.

3. **Same—Personal Property of Lessee.**

Where it is apparent that the intention of the parties is that improvements or additions placed upon realty are to remain the personal property of lessee, and are to be removable, then the intention of the parties takes the question out of the general rule, and such improvements or additions are personal property and are removable.

**4. Same—Liability for Debts of Lessee.**

Where it is apparent that improvements or additions placed upon realty are intended to be and remain the removable personal property of lessee, then such improvements or additions are subject to be attached and sold to satisfy judgment against the lessee.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by the Union Petroleum Company against the Valley Refining Company; the Uncle Sam Oil Company intervening as claimant of property levied upon. Judgment against intervener, and it brings error. Affirmed.

Horace Speed, for plaintiff in error.

Mason & Honnold, for defendant in error.

HARRISON, J. This is an appeal from a judgment of the district court against the intervener in a suit by the Union Petroleum Company against the Valley Refining Company, and involves the construction of a lease contract between the Uncle Sam Oil Company and the Stewart Refining Company. The Uncle Sam Oil Company owned a tract of land in or near West Tulsa, upon which it had a refining plant, and leased such refining plant and acreage to the Stewart Refining Company. The Stewart Refining Company later became and was known as the Valley Refining Company, which continued to operate the refinery under the lease to the Stewart Refining Company. The Valley Refining Company became indebted to the Union Petroleum Company, defendant in error here, in the sum of $40,000. The Union Petroleum Company brought suit against the Valley Refining Company upon the debt and obtained a judgment in its favor and later procured an execution against and levied upon certain properties supposed to belong to the Valley Refining Company, and which had been used in the operation of the aforesaid refinery. Thereupon the Uncle Sam Oil Company, plaintiff in error here, was allowed to intervene, and claimed in its plea that the property levied upon to satisfy the judgment of the defendant in error here was not the property of the Valley Refining Company, but was the property of the intervener, plaintiff in error here, under the terms and provisions of the lease under which the Valley Refining Company was operating said refinery, and that such property was not subject to levy of execution of defendant in error and not movable. The property levied upon and advertised for sale to satisfy the judgment of defendant in error was as follows:

"One laboratory equipment, one lot of laboratory instruments, five (5) tank wagon loading tanks and foundations, one barrel of boiler covering, five (5) barrels of boiler compound, two (2) Tycos recording thermometers, one (1) Worthington pump 7½ x 8½ x 10, No. 566681, one Worthington pump 6 x 4 x 6, No. 81242, two (2) vapor drums and fittings, one (1) concrete tank, No. 21, one (1) 250 barrel steel tank No. 22, twenty thousand (20,000) gallons of fuel oil in tanks No. 14, 15, 16, 17 and 18, one (1) wooden tank No. 36, one (1) 16 gallon water cooler, three (3) fire extinguishers, one (1) 25 feet piece of 1¼ inch rubber hose, one (1) lot of pump parts, one 40 gallon Foamite 2 wheel chemical engine and one (1) lot of chemical charges."

The intervener, plaintiff in error here, claimed all of the above property as belonging to it under the aforesaid lease contract. Issues were joined between plaintiff in error, as intervener below, and defendant in error, as plaintiff below, and the cause was tried without a jury.

The court upon the testimony, the authorities, and argument rendered judgment in favor of the defendant in error for the following pieces of property contained in the above notice of sale, and claimed by plaintiff in error, the intervener, to wit:

| | |
|---|---|
| 5 tanks at $300.00 each and wooden foundations | $1,500 |
| 1 250 bbl. steel tank No. 22 | 250 |
| 1 wooden tank No. 26 | 1,500 |
| 1 lot pump parts | 75 |
| 1 B. S. machine | 20 |

The remaining articles of property contained in the aforesaid notice of sheriff's sale were adjudged to belong to intervener, plaintiff in error here, but intervener appealed from such judgment and became plaintiff in error in this court, claiming all of said property and claiming that the court erred in not holding that all of said property belonged to intervener under the lease, and that the court erred in adjudging that any of said property was subject to execution to satisfy defendant in error's judgment.

The petition in error consists of an assignment of eight errors, but the entire brief and argument of plaintiff in error is directed towards its construction of the provisions of the lease contract between plaintiff in error and the Valley Refining Company. The Valley Refining Company dropped out of the case after judgment was rendered against it and in favor of the Union Petroleum Company, which is defendant in error here.

The provisions of the lease involved in this controversy and which are alleged to have been misconstrued by the trial court are as follows:

"(1) Whereas certain expenditures are necessary in order to place the plant in

workable condition, the party of the second part is hereby authorized by the party of the first part to make such expenditures as may be agreed by the parties hereto to be necessary, such expenditures not to exceed the sum of twenty-two hundred ($2,200). Duly receipted bills for work done and material furnished in such repairs shall be accepted dollar for dollar in part payment of the seventh month's rental, the difference, if any, between the amount of such bills and the sum of $2,225.00, to be paid in cash by the party of the second part to the party of the first part."

"(2) That the party of the second part will use said property exclusively for the purpose of conducting an oil refining and jobbing business, and that it will maintain the property hereby demised and let in first-class working condition, and will make all necessary repairs during the term of this lease without expense or liability to the party of the first part; and that all repairs, improvements, replacements and additions which may be required, or may be necessary to so maintain the plant, shall become and remain the property of the party of the first part; and the party of the second part further agrees that at the termination of this lease it will deliver the property hereby leased and let, to the party of the first part in as good condition as when received, ordinary wear and tear excepted;

"(5) That all additions, stills or units which may be erected upon the property hereby leased, and more particularly all additions, stills or units of the Green Street Cracking Process, shall be erected at the sole cost and expense of the party of the second part, free from all liens, liabilities or claims whatsoever against the party of the first part; and that all such additions, stills or units shall be and remain the property of the party of the second part, and may be removed by the said party of the second part upon the termination of this lease, or within thirty (30) days thereafter. In this connection it is agreed by the party of the second part that the additions, stills or units so erected by or on account of the said party of the second part, shall at all times be separable from the improvements, stills, units and property of the said party of the first part, and shall be removed by the party of the second part without detriment or injury to the property of the party of the first part, and without diminishing the efficiency, capacity or usage of the refinery hereby leased."

After lessee had begun operation of the refinery under the foregoing lease, they, the lessor and lessee, entered into a contract which to an extent modified the original lease, said contract being as follows, to wit:

"The party of the first part and the party of the second part herewith further agree:

"That in the event the party of the second part wishes to install one or two stills, and not more than two stills, thereby increasing the refining capacity of said refining plant, it may do so under the following terms and conditions:

"Such still or stills to be installed entirely at the expense of the party of the second part and the party of the first part agrees to pay for any such still or stills installed, 60% of the duplication cost of the same in force and effect at the time when the aforesaid lease of said second party on said premises, as herein modified, shall terminate. It is understood that unless the party of the second part takes advantage of its option for the two-year renewal period on the aforesaid lease, as herein modified, the party of the first part is not obligated in any way to pay anything whatever for any said still or stills, and, in that event, said second party shall have the right to remove same from said demised premises.

"It is further agreed that in the event the party of the second part does avail itself of the option for the two years' additional lease on the refinery owned by the party of the first part, and further does build one or two stills, and not more than two stills, as herein stated, then the party of the first part does agree to pay for such still or stills at the time when the aforesaid lease of said second party on said premises, as herein modified, shall terminate, on the aforesaid basis of 60% of the reproduction cost of the same at said time."

Under the provisions of the lease, the lessee made some extensive repairs, improvements, and additions, and claimed the right, under the lease, to remove same after the expiration of such lease, and the court held that the aforesaid five tanks and their foundations, the one 250 barrel steel tank, the one wooden tank, the one lot pump parts, and the one B. S. machine were such improvements and additions as, under the lease, the lessee had a right to remove, and that they were, therefore, subject to sale to satisfy defendant in error's judgment against the lessee.

This cause was briefed and orally argued in this court, and after oral argument plaintiff in error filed memorandum brief, defendant in error filed answer to such memorandum brief, and plaintiff in error filed reply to such memorandum answer brief, but none of such memorandum briefs constituted more than a mere continuation of the arguments made in the original briefs.

The contentions of plaintiff in error are based upon, and its argument and authorities are in the main directed toward, the meaning of the terms "maintain", "improvements", "additions", etc. The position of plaintiff in error is that the word "maintain," as used in the second paragraph of the lease

above quoted, includes all replacements, improvements, and additions that were added to the plant, or placed upon the land, under any and all the provisions of the lease, and many authorities are cited in support of such contention.

The authorities are applicable to the provisions of paragraph 2 above quoted · in so far as repairs, improvements, replacements, and additions are necessary to maintain the plant in as good working condition as it might be placed after the expenditure of the $2,250, provided for in the first paragraph above quoted, but such authorities are not dealing with the character of "additions" provided for in paragraph 5 above quoted, and are not applicable thereto.

From an examination of the foregoing paragraphs of the lease it is apparent that the parties to the lease contract had in contemplation and made provision for two separate and distinct contingences or conditions, viz.: First. The necessity for certain expenditures in putting the plant in workable condition at the expense of lessor, and maintaining it in such condition at the expense of lessee. Second. The probable necessity for increased capacity by additional units in order to meet increased demands for the products, at the expense of lessee and to remain the property of lessee.

Paragraph 1 makes provision for such repairs as were necessary to place the plant in a workable condition to start with; paragraph 2 provides that the plant shall be maintained in first-class working condition, and for making all necessary repairs which may be required to so maintain the plant, and that such repairs, improvements, replacements, and additions so made for that purpose—that is, for the purpose of maintaining the plant in as good condition as it might be placed after the expenditures provided for in paragraph 1 were made —should become the property of the lessor. In other words, at the time the contract was entered into the plant was not in such workable condition as the parties desired it to be, hence it was agreed that the sum of $2,250, a sum equal to each month's rental, should be paid by the lessor —that is, kept out of the seventh month's rental due—in order to make such necessary repairs, and that after the plant was put in a workable condition by such expenditures, then it should be maintained in such condition at the expense of the lessee, and that all repairs, improvements, replacements, and additions necessary to so maintain the plant in such condition should be made at the

expense of the lessee, but should be and remain the property of the lessor; but paragraph 5 recognizes and makes provision for the second condition, viz., that the occasion might arise for additional units to be added, consisting of such stills, tanks, pumps, machines, etc., as were necessary to put such additional units in operating order, in order to meet a demand for increased capacity, should such demand arise, and in such event the lessee was authorized under paragraph 5 to purchase such class of additions at his own expense and should be allowed to remove them at the termination of the lease or within 30 days thereafter.

These provisions, it seems, are plain and are wholly distinct and have reference to different additions from those provided for in paragraph 2 of the lease. In other words, paragraph 2 provided for such additions as might be necessary to maintain the plant in as good condition as the $2,250 would put it, while paragraph 5 is intended to meet possible demands for increased capacity, and if necessity or demand arose for the additions provided for in paragraph 5, they were to be paid for by the lessee, and he was authorized to remove them at the termination of the lease. The subsequent contract above quoted emphasizes and explains this view.

This was the view the trial court seems to have taken, and in our opinion his judgment is well supported by the authorities.

The trial court seems to have taken the view with the additions and units provided for in paragraph 5 were not intended to be immovable fixtures, but were intended by the parties to be mere personal property, chattels, to be paid for by the lessee, to be the property of the lessee and to be removed by the lessee at the termination of the lease.

There seems to be a practical harmony among the authorities that, in order to determine whether improvements placed upon real estate are to be treated as part of the realty and immovable, or as mere personal property and movable, the intent of the parties to the contract authorizing such improvements to be made will govern. See R. C. L., page 1063, sec. 7, and authorities cited in support of the text; 14 R. C. L., page 17, sec. 4, and authorities cited.

This court has decided that buildings and other improvements placed upon real estate may be treated as movable personal property where such was the intention of the contracting parties and where such intention is clearly expressed in the contract of the parties in reference thereto. See Welch

v. Church, 55 Okla. 600, 155 Pac. 620; Shelton v. Jones, 66 Okla. 83, 17 Pac. 458.

The trial court seems not to have confined itself solely to the provision of the contract, but allowed oral testimony as to such additions, and from all the testimony, the actions of the parties, and surrounding circumstances, as well as from the provisions of paragraph 5 of said lease, as modified and explained by the subsequent contract above set out, concluded that it was the intention of the parties that the articles of property adjudged to belong to the Valley Refining Company were intended to be and remain the property of the lessee and were removable at the termination of the lease, and were therefore subject to execution to satisfy the debts or judgments against the lessee. In this view we think the trial court is correct.

The judgment is affirmed.

JOHNSON, C. J., and McNEILL, KANE, and KENNAMER, JJ., concur.