STATE OF SOUTH DAKOTA ex rel., SIOUX FALLS
MOTOR COMPANY, Respondent, v. WELSH, as
Director of Taxation, Appellant.

(270 N. W. 852.)

(File No. 7922.   Opinion filed December 31, 1936.)

*Walter Conway*, Atty. Gen., and *R. F. Drewry*, Asst. Atty. Gen., for Appellant.

*Martens & Goldsmith*, of Pierre, for Respondent.

RUDOLPH, J. This is an appeal from an order overruling a motion to quash an alternative writ of mandamus. The action involves a construction of certain parts of division 3 of chapter 205, Laws of 1935 (section 33 et seq.), known as the Retail Occupational Sales Tax. The complaint upon which the alternative writ

is based alleges that the plaintiff, Sioux Falls Motor Company, is a corporation engaged in the "business or occupation of selling new or unused Ford automobiles, automobile accessories, gas, oils and other repairs, at retail, * * * that incidental to the sale at retail of said Ford automobiles, and as a means of realizing, in cash, the selling price of said Ford automobiles, the said relator occasionally accepts, as a part of the purchase price, and subsequently resells to users, consumers, or others, used or second-handed automobiles of Ford or other make or trade name, as well as other tangible personal property; that the said relator is not engaged in the business or occupation of buying or selling at retail, to users or consumers in South Dakota, used or second-handed automobiles or other tangible personal property, except as alleged in this complaint."

The complaint sets forth five separate transactions, in each of which the plaintiff sold a new Ford automobile and, as a part of the purchase price therefor, accepted a secondhanded or used automobile. In disposing of this secondhanded automobile, which was accepted as part of the purchase price for the new car, the plaintiff again received part of the purchase price in cash, and again took in another secondhanded car. This same process was repeated in disposing of the second used car. In other words, the relator conducted three separate sales, in each instance taking in a used car as a part of the purchase price in order to realize the original price of the new car which was sold. In each of the five transactions set forth in the complaint, a similar process was gone through by relator in disposing of the several new cars. The defendant, Director of Taxation of the State of South Dakota, by rule emanating from his office, provided: "Sales of new automobiles are taxable at the full consideration received, including the allowance made upon a trade-in of a second hand automobile. When the car accepted in trade-in is sold, the gross receipts from that sale is likewise taxable."

Complying with this rule of the director of taxation, the relator paid a tax upon each automobile transaction alleged in the complaint. Tax at the rate provided in said chapter 205, Laws 1935, was paid, based upon the sale of the new automobile for the full consideration received including the allowance made for the secondhanded

automobile accepted as part payment. When the secondhanded automobile was sold, the tax was paid upon the entire purchase price received for that car including, as a part of the purchase price, the trade-in value of the secondhanded car taken in on that deal. Relator paid the tax on this basis for each sale of a new as well as a secondhanded car. Relator now claims that the order promulgated by the director of taxation is erroneous; that it paid its tax upon an improper basis, and in this action seeks to compel the director to refund that portion of the tax which it now claims was improperly paid. Relator contends that the correct basis for the payment of this tax is the sale price of the new automobile only, and that it should not be compelled to pay a tax measured by the cash received and in addition the value of the secondhanded cars which it accepted and sold as a result of the original sale of the new cars. The trial court sustained relator's contention and defendant has appealed.

The following provisions of chapter 205, Laws of 1935, are involved. Subdivision (a), section 34, provides: "There is hereby imposed as a tax upon the privilege of engaging in business as a retailer, a tax of two percent (2%) upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this Division, sold at retail in the State of South Dakota to consumers or users."

By subdivision (c) of section 33 it is provided: " 'Retail sale' or 'sale at retail' means the sale of tangible personal property to the consumer or user thereof, or to any person for any purpose other than for resale."

In subdivision (f) of section 33, the term "gross receipts" as used in subdivision (a) of section 34 is defined as follows: " 'Gross receipts' means the amount received in money, credits, property or other money's worth in consideration of sales at retail within this State, without any deduction on account of the cost of the property sold, the cost of materials used, the cost of labor or services purchased, amounts paid for interest or discounts, or any other expenses whatsoever, nor shall any deduction be allowed for losses, provided, however, that discounts for any purpose allowed and taken on sales shall not be included, nor shall the sale price of

property returned by customers when the full sale price thereof is refunded either in cash or by credit. Provided, further, that on all sales of retailers, valued in money, when such sales are made under conditional sales contract, or under other forms of sale wherein the payment of the principal sum thereunder be extended over a period longer than sixty (60) days from the date of sale thereof that only such portion of the sale amount thereof shall be accounted, for the purpose of imposition of tax imposed by this act, as has actually been received in cash by the retailer during each quarterly period as defined herein."

In subdivision (e) of section 33 it is provided that: "The isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as engaging in the business of selling such tangible personal property at retail does not constitute engaging in such manner."

Respondent first contends that the sales of the secondhanded automobiles which it received and sold, as set out above, constitute isolated or occasional sales within the meaning of the above subdivision (e) of section 33, and that the gross receipts received therefrom were not received "in the course of or incident to some business vocation, profession, or calling," as required by this court in the case of State ex rel Botkin v. Welsh, 61 S. D. 593, 251 N. W. 189, 214, before such gross receipts may be the basis for a plan of taxation. It will be observed, as disclosed by this complaint, that each new car transaction was accomplished by the trade-in of an old car. Furthermore, this court will take judicial notice of the fact that the great majority of the sales of new automobiles at this time are accomplished by means of accepting as part of the purchase price a secondhanded automobile. As stated in respondent's brief: "Less than ten per cent of all new car sales are 'clean sales' for cash or installment rates. The rest are for old cars plus."

In view of this condition, it seems to us that the sale of secondhanded cars is a necessary incident to the business of the automobile dealer. It appears to us that it is not only a necessary incident to this business, but that it is an indispensable part thereof. In other words, due to the manner in which the business is conducted, it is absolutely necessary for the dealer in new automobiles to conduct a large portion of his business on the basis of accepting

used or secondhanded automobiles as a part of the consideration to be paid for the new. The complaint discloses that fifteen secondhanded cars were sold as compared to five new cars. The sales of these fifteen secondhanded cars were necessary that relator might successfully accomplish the thing he proposed to do; that is, sell five new cars and thereby profit in money. Certainly such sales were neither "isolated or occasional." As we know the business in which relator is engaged, its success and very existence depends upon the sale of secondhanded cars. We are of the opinion, therefore, that the sales of the secondhanded cars alleged in the complaint were neither occasional nor isolated within the meaning of subdivision (e) of section 33, and that the gross receipts from these sales were received in the course of or incident to the business in which relator was engaged.

■ . We are further of the opinion that the value of the used cars accepted by relator in consideration for the sale of either new or other used cars comes within the meaning of gross receipts, as defined in subdivision (f) of section 33. According to said subdivision (f), gross receipts means, among other things, the amount received in "property or other money's worth" in consideration of sale at retail. There cannot be much question but that each sale alleged in the complaint, whether it be a sale of a new or secondhanded automobile, was a sale at retail within the meaning of subdivision (c) of section 33. The property sold was tangible personal property, and was not sold for the purpose of resale. Under the allegations of the complaint, each automobile traded in had a certain definite and fixed value, and was worth that amount in money. It therefore seems clear to us that the acceptance of these secondhanded automobiles as a part of the purchase price in the sale at retail comes within the meaning of the term "property or other money's worth," and therefore within the meaning of "gross receipts," as defined in the law.

■ The fact must be kept in mind that the tax with which we are dealing is an excise or privilege tax imposed upon the privilege of engaging in an occupation. It is not a tax upon gross receipts as such, but gross receipts as defined in the law is used as a measure to determine the amount of tax to be paid for the privilege of engaging in an occupation or business. The Legisla-

ture might have used any one of a number of other standards for determining the amount of the tax to be paid. However, the Legislature has seen fit to use as its standard that which is referred to in the law as "gross receipts." This term "gross receipts" has been defined by the law itself, and this court, of course, must accept the definition of the Legislature. Under that definition "gross receipts" is not limited to the money actually received in consideration for a sale at retail, but includes "property or other money's worth" received in consideration of such sale. We are of the opinion that the sale of each car by relator, whether that car be new or old, was a sale at retail within the meaning of the law, and that the value of each used car accepted as a part consideration for such sales comes within the meaning of "gross receipts" as that term is defined.

It is the further contention of relator and respondent that placing a construction upon this law which compels respondent to pay a tax measured by the "gross receipts," as that term is defined in the law, from old as well as new automobiles, renders the law invalid because, respondent insists, the law given such construction then discriminates against the automobile dealer. Respondent argues that, when the law "singles out one particular class of retailer (the dealer in new automobiles) and attempts to measure his tax by a different yard-stick than applies to other retailers, then the tax is no longer uniform nor equal. It applies only to a portion of the class. The retailer in new automobiles has been selected from retail dealers of other goods, wares and merchandise and his tax measured in a non-uniform and unequal manner. There must be uniformity in measuring the tax as well as uniformity in selecting the subject of the tax." Respondent cites, for example, the grocer, whose receipts are mostly cash, and who accepts no trade-in of secondhanded goods. It is argued that the grocer pays a tax measured only by the cash that he actually receives; while the automobile dealer pays his tax measured, not by the cash which he actually receives, but by the cash which he receives plus the trade-in value of the secondhanded cars which he accepts for the purpose of eventually getting the cash price for the new car.

There is nothing in the wording of the law which differenti-

ates between the automobile dealer and any other retailer. The only reason why the automobile dealer pays a tax on a somewhat different basis than another retailer is because of the different manner in which the automobile dealer conducts his business as compared to the other retailer. This very reason, in our opinion, places the dealer of automobiles (and perhaps all those retailers who conduct their business in the same manner as the automobile dealer) in a different class for taxation purposes from other retailers, and therefore defeats the right of the automobile dealer to successfully set up the claim of discrimination. This matter of classification for the purposes of taxation was gone into so thoroughly in the case of State ex rel Botkin v. Welsh, supra, that we need not now attempt to add anything thereto. In that case we said: "Suppose that the retailers in a state consist of twenty separable and distinct classes or groups and concede that each group is susceptible of distinct and and separate tax treatment; then there is no logical reason why the Legislature need deal with these twenty classes by twenty separate laws, and if the Legislature sees fit to deal with them in one comprehensive law under the broader term 'retailers' this does not necessarily mean that the twenty included classes susceptible of separate treatment have lost their nature in that respect, or that all retailers have now become a class throughout which uniformity must prevail."

So in this case, simply because the Legislature has seen fit to include in one law all retailers, does not mean all retailers must therein necessarily be treated alike. If this broad classification of retailers can be subdivided upon a basis which is reasonable for classifying for purposes of taxation, then the different subdivisions may be treated differently in the one law. Because the automobile dealers has been included in this comprehensive law under the term "retailer" does not mean that he has lost his identity as a class, and the fact that he pays his tax upon a somewhat different basis than other retailers who conduct their business differently, does not, therefore, subject this law to attack upon the grounds that it is not uniform and equal or that it discriminates against the automobile dealer.

Mention is made of the fact that in the last portion of subdivision (f) of section 33 there is excepted from "gross re-

ceipts", conditional sales contracts wherein the principle sum is extended over a period longer than 60 days from the date of the sale. We cannot conclude that this provision makes the law objectionable because of the lack of uniformity. The provision applies to all coming within the terms of the law. So far as this plaintiff is concerned, it applies to all in his class equally, and he is not discriminated against thereby. Just why the Legislature wanted to exclude conditional sales contracts from being included within the meaning of the term "property or other money's worth," as used in the same subdivision of this law wherein the above-quoted phrase is used, we do not know, but the reason is no concern of ours, unless such exclusion renders the law nonuniform or unequal in its application, and we are satisfied that it does not.

The order appealed from is reversed, and the trial court is directed to enter its order quashing the alternative writ of mandamus.

POLLEY, P. J., and ROBERTS, J., concur.

CAMPBELL and WARREN, JJ., dissent.