GENERAL TIRE COMPANY, Inc., v. OKLAHOMA TAX COMMISSION.

No. 29888. April 8, 1941.

*112 P. 2d 407.*

Lillard & Gibbons and Wayne Wheeling, all of Oklahoma City, for plaintiff in error.

F. M. Dudley, A. L. Herr, and C. D. Stinchecum, for defendant in error.

BAYLESS, J. April 23, 1940, the Oklahoma Tax Commission entered an order assessing an additional sales tax against General Tire Company, Inc., for the period beginning August 1, 1938, and ending December 31, 1939. Company appealed to this court from said order. The parties entered into a stipulation of facts that sufficiently illustrates the circumstances in controversy. We quote portions of it:

"That this protest involves a construction of the Sales Tax of 1937, article 10, chapter 66, S.L. 1937, and the Sales Tax Act of 1939, article XI, chapter 66 S.L. 1939; and that inasmuch as the two statutes are practically identical, insofar as the matter here involved is concerned, the matter may be determined upon an interpretation of article 11, chapter 66, S.L. 1939.

"That the protestant, General Tire Company, Inc., is engaged principally in the sale of automobile tires, both at wholesale and at retail, and in the conduct of such retail business performs what is known in trade parlance as 'change-overs.' A 'change-over' occurs in the following manner: The purchaser of a new motor vehicle from a motor dealer is not satisfied with the factory tire equipment, or for other reasons desires to make a change of tires. The purchaser drives the new motor vehicle, which has been registered in his name, to the protestant's place of business and purchases a complete set of new tires from the protestant for a stipulated price. The protestant accepts the factory equipped tires as part payment on the sale price of the new set of tires, and the balance of the sale price of the new tires is received in cash. The protestant then removes the factory equipped tires from the motor vehicle, placing the same in stock for resale.

"That protestant has filed voluntary sales tax returns during all the period hereinafter mentioned, and, in so doing, has included in said returns the tax on the cash considerations received from the sale of tires in 'change-over' transactions, but has not included in said returns in the tax on the balance of the selling price represented by the trade-in value of the factory equipped tires accepted in lieu of cash."

It is further stipulated that no issue is made of the calculation of the amount due, nor the procedure followed in auditing and assessing the amount.

Briefly, the contention of company is that a sales tax is paid by the purchaser of the new motor vehicle on the factory equipped tires, and a sales tax is paid on the factory equipped tires when they are sold by it to some consumer, both of which are actual sales to consumers as contemplated by our statutes, supra; but, if it is required to collect a sales tax or to pay a sales tax on the "change-over" transaction whereby it gets the factory equipped tires from the purchaser of the new motor vehicle for resale, it will be a third tax levied on the tires before they get into the hands of the ultimate purchaser, the consumer. It argues that this was not the intent of the Legislature; that the purpose of the statutes, supra, was to levy upon and collect from the consumer, the person who purchased to use or consume, the tax in question. It also argues that that section 6, subparagraph N, creates an exemption in favor of transactions of this type.

On the other hand, the commission argues that the definition of "sales" in the act clearly applies to the transaction, and that the definition of "gross proceeds or gross receipts" applies to the considerations received by company in these transactions whether they be in cash or other personal property; and that the exemption claimed by virtue of section 6, subparagraph N, is not a proper construction of that portion of said statutes.

The pertinent portions of the Act of 1939, cited and relied upon and discussed by the parties, read:

Section 5:

"There is hereby levied an excise tax of two (2%) per centum upon the gross

proceeds or gross receipts derived from all sales to any person subsequent to May 31, 1939, of the following:

"(a) Tangible personal property."

Section 2:

"(c) Sale: The term 'sale' is hereby declared to mean the transfer of either the title or possession for a valuable consideration, of tangible personal property, regardless of the manner, method, instrumentality, or device by which such transfer is accomplished. The term 'sale' is also declared to include the exchange, barter, lease, or rental of tangible personal property, where such exchange, barter, lease or rental results in either the transfer of the title or the possession. . . .

"(d) Gross Receipts-Gross Proceeds: The term 'gross receipts' or 'gross proceeds' means the total amount of consideration for the sale of tangible personal property and such services as are herein specifically provided for, whether the consideration is in money or otherwise, without deduction therefrom on account of the cost of the property sold, labor or service performed, interest paid, losses or any expense whatsoever."

Section 6:

"There is hereby specifically exempted from the tax imposed by this act the following:

"(n) Gross receipts or gross proceeds derived from the sale of motor vehicles on which the motor vehicle excise tax has been paid during the same calendar year."

We are of the opinion that the commission is correct in its order assessing the additional tax.

As can be seen from section 5, supra, the tax is levied upon the gross proceeds or receipts from sales of tangible personal property. There was a sale of tangible personal property when the motor vehicle dealer sold the motor vehicle equipped with factory tires, and it is agreed that a tax was paid thereon under other applicable provisions of our law. There was a sale of tangible personal property by the owner of the newly purchased automobile to company and by company to the purchaser of the newly purchased automobile under the definition of the statutes, supra, although the transaction between them involved the exchanging of automobile tires and the payment of some money. The statute says there is a sale "regardless of the manner, method, instrumentality or device" by which the transfer of title or possession of tangible personal property is accomplished, including "the exchange, barter, lease or rental" of such property. The definition quoted is very comprehensive, and so long as the intent thereof is clear and the situation to which it is applied clearly fits within its framework, we have no occasion to attempt to carve out exceptions.

There are a number of variations upon the particular transaction involved. If the purchaser of the automobile had been content with the tires with which the car was equipped, and had worn them until replacements were needed and the nearly used tires had been taken in for some allowance, we would have this situation with a different time and money element. If the purchaser of the car had sold the tires that came with the automobile to a third person, it would have been a taxable sale; and his purchase of new tires from company would be a taxable sale. If he had exchanged the tires that were on the automobile with the motor dealer for other tires, it seems agreed that would have been a return of merchandise and not taxable. If he had paid company cash for these tires it would have been a taxable sale. This brings us back to the situation before us: Is the exchange of the tires that were on the automobile for other tires and the payment of the difference in money a "sale" that requires the payment of the tax on the full, selling price of the better tires? Or, stated another way, is the tax levied only on the cash that passes and the liability for additional tax deferred until the dealer sells the tires obtained in the exchange?

It is to be observed that the language of the statutes, supra, nowhere uses the term "cash," and in subdivision (d), supra, "gross receipts or gross proceeds" mean total consideration received,

"whether . . . in money or otherwise." From this, we cannot infer that the statutes are susceptible of being interpreted to mean the "cash" or "money" that is received is the only part of the consideration that is taxable.

We recognize that the repetitive effect of this levy is more burdensome in sales of this character than where sales are for cash only, but, as pointed out in State ex rel. Sioux Falls Motor Co. v. Welsh, 65 S. D. 68, 270 N. W. 852, the fact that this is so may not mean that the Legislature was unaware thereof and did not intend such an effect. As pointed out in that case, in the argument, a dealer in automobiles who sold a new car usually had to accept a used automobile as a part of the purchase price, and in disposing of this used automobile usually had to take another used car, which he usually could dispose of for cash, and in this manner 15 separate and distinct taxable sales were necessary to dispose of five new automobiles. It was argued that if each sale involving the acceptance of a used automobile as a part of the sale price were taxable to the full amount of the consideration for the better automobile being sold, automobile dealers would be taxed on a different basis than retail grocers or others who disposed of property in one sale for cash, and would be taxed in a greater amount when such was not the purpose of the law. The South Dakota Court said:

"There is nothing in the wording of the law which differentiates between the automobile dealer and any other retailer. The only reason why the automobile dealer pays a tax on a somewhat different basis than another retailer is because of the different manner in which the automobile dealer conducts his business as compared to the other retailer."

The Supreme Court of Colorado answered an argument respecting the repeated taxation of the same article by saying in Bedford v. Hartman Bros., 104 Colo. 190, 89 P. 2d 584:

"The fallacy is further illustrated by the statement in the conclusion, that 'If they have to put it in a second time, of necessity, they would pay four per cent.

to the state on the agreed value of the second-hand car, which conveys the idea that if the tax has been paid on the property once that it is no longer subject to the tax. There is no limit to the number of times a particular article of merchandise may be subject to a sales tax so long as it remains in the stream of commerce and goes through the regular channels of trade. . . .'"

We find from Prentice-Hall's State and Local Sales and Use Taxes Generally, §§ 92571 and 92655, that the tax is usually exacted according to the order of the commission in this instance. See Bedford v. Hartman Bros., supra; McCanless Motor Co. v. Maxwell, 210 N. C. 725, 188 S. E. 389; State v. Hallenberg-Wagner Motor Co., 341 Mo. 771, 108 S. W. 2d 398, and State v. Welsh, supra. All of these cases involve the sales of new automobiles, except the North Carolina case, but from the general wording of the statutes, the general fact situations and the arguments made by the parties therein, we think the issues and the principle are the same, and there seems to be no difference in views in the courts that have passed on this issue.

In the North Carolina case the statute expressly exempted from the tax the selling price of second-hand or used automobiles which had been taken as a part of the consideration for the sale of new automobiles. The contention there was that this was intended to, and should be extended by implication to apply to sales of used automobiles taken as a part of the purchase price of second-hand or used automobiles. The court said:

"The express wording of the exempting subsection of the statute, taken in its ordinary and commonly accepted meaning, includes only sales of second-hand or used articles taken in part payment in the sales of new articles, and does not include sales of second-hand or used articles taken in part payment of other second-hand or used articles, although such last-mentioned articles had been taken in part payment of the sales of new articles."

"There is really no ambiguity in the wording of the exempting subsection of

the statute. . . . It expresses plainly and clearly the intent of its framers, and there is no occasion to resort to any means of interpretation other than to follow such intent. 'This meaning and intention must be sought, first of all, in the language of the statute itself. For it must be presumed that the means employed by the Legislature to express its will are adequate to the purpose, and do express that will correctly. If the language of the statute is plain and free from ambiguity, and expresses a single, definite, and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended to convey.' "

We think that is an adequate expression of the proper answer to the issues presented herein by the company.

We do not agree with company that section 6, subdivision (n), applies here. The plain intent of that subdivision is to exempt from this sales tax completely the sales price of automobiles, for that is covered by the Motor Vehicle Tax Act, art. 13, chap. 66, S. L. 1939; and that these taxes are designed to complement and not to overlap each other is further demonstrated by the provisions of section 6 of the Motor Vehicle Excise Tax Act, wherein it is said:

"The excise tax levied by this act is in lieu of all other taxes for the calendar year in which such tax is due and payable, except:

"(c) The sales tax on any accessories not included in the manufacturer's factory list price."

The order assessing the additional tax is affirmed.

WELCH, C. J., and OSBORN, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, V. C. J., and RILEY, J., absent.