**MAGNOLIA PETROLEUM COMPANY, a corporation, Plaintiff in Error,**

v.

**OKLAHOMA TAX COMMISSION, Defendant in Error.**

No. 37644.

Supreme Court of Oklahoma.

May 13, 1958.

Rehearing Denied June 10, 1958.

Sam H. Field and Wendell J. Doggett, Dallas, Tex. for plaintiff in error.

R. F. Barry, Oklahoma City (Chas. B. Wallace, Frank C. Bolton, Jr., R. T. Wilkinson, Jr., Dallas, Tex., Robert W. Richards Oklahoma City, of counsel), for defendant in error.

JOHNSON, Justice.

The case was tried on a stipulation of facts which shows that on February 16, 1948, Magnolia Petroleum Company (hereafter referred to as Magnolia) under a written contract sold all of its joint interest in certain Osage Indian productive oil and gas leases and properties to Kewanee Oil Company (hereafter referred to as Kewanee) for a total lump sum consideration of Two Million Dollars. Kewanee's "prime purpose in acquiring the leasehold estate from Magnolia was to produce and further develop oil and gas reserves and not to salvage property located thereon." The last mentioned company did not own an interest in said properties prior to the sale, and following the sale Magnolia owned no interest in the properties. The sale included Magnolia's interest in properties located upon the leases, such as casing, tubing, pump equipment and other property generally used in and around producing oil properties, which property was listed in a double-spaced typewritten inventory that was seventeen letter-sized pages in length. The sale did not include any supplies and warehouses or supplies not in use on the leases. The Tax Commission attributed $110,951 of the gross proceeds of the sale to Magnolia's interest in property of the class above referred to, and sales taxes in the aggregate amount of $4,371.46 were assessed on said proceeds. Magnolia agrees that it owes sales tax in said amount if its sale to Kewanee is in fact subject to sales tax.

It was provided in the oil and gas leases covering the property sold that the lessees or their successors in interest were privileged to remove property of the class that the Commission treated as tangible personal property for sales tax purposes. In an amendment to the stipulation of facts it was stipulated that the value of the tang-

ible personal property sold which was capable of being removed from the leases was, for the purpose of calculating sales taxes, $110,951.

It was provided in the contract of sale that Magnolia should receive as additional consideration an oil payment out of oil that might be produced from unexplored deeper horizons.

It was stipulated that the property sold was subject to gross production taxes; that sales taxes had been paid on the tangible personal property when originally acquired, and that the amount of United States Revenue stamps affixed to Magnolia's assignments to Kewanee "was based on the full value of consideration paid for the leases without any deduction for the value of personal property."

It was stipulated that since the effective date of 68 O.S.1951 § 1251d(s), the Tax Commission had construed said sub-section "as not applying where a vendor does not own a joint interest in the property sold following the sale."

It was agreed that Magnolia timely and fully complied with the provisions of 68 O.S.1951 § 1470, relative to paying under protest the taxes assessed and filing suit to recover said taxes.

The trial court entered judgment for the Tax Commission and Magnolia perfected this appeal.

Magnolia contends that "the trial court erred in holding that the Oklahoma personal property sales tax applied to the sale, which sale is inherently a real property transaction," and that in any event the sale was exempt from tax under the provisions of 68 O.S.1951 § 1251d(s). The Commission opposes both contentions.

In Uncle Sam Oil Company v. Union Petroleum Co., 90 Okl. 135, 216 P. 443, it was pointed out that the authorities appear to be in practical harmony on the propostion that in determining whether improvements placed upon real estate are to be treated as personalty or real estate, the intent of the contracting parties will govern. That where it is agreed that im-

provements to real estate may be removed by the lessee, this evidences an intent on the part of the parties to treat the improvements as personalty. The first paragraph of the syllabus of the cited case reads as follows:

"Where a contract for lease of real estate is entered into between a land owner; lessor, and a lessee, and provision is made in it for additions or improvement to be placed upon the land; and, where it appears that the parties had and expressed an intention as to the removability of such improvements or additions, then the intention of the parties constitutes the test as to whether such improvements or additions are removable."

We are of the opinion that tangible personal property placed upon real estate under an oil and gas lease wherein it is provided that the lessee or his assigns may remove said property, and which property is capable of being removed, remains tangible personal property. The fact that such property remains tangible personal property does not, however, serve as a complete answer to the question of whether or not a sales tax is levied on gross proceeds arising from a sale of said property, which question can only be answered by considering the provisions of the Sales Tax Act.

The levying section of the Sales Tax Act, 68 O.S.1951 § 1251c, reads in part as follows:

"There is hereby levied an excise tax of two percent (2%) upon the gross proceeds or gross receipts derived from all sales subsequent to May 31, 1941, to any person of the following:

"(a) Tangible personal property."

The phrase "tangible personal property" as used in the above cited statute is all inclusive, and we find nothing in the Sales Tax Act except the specific exemption provided for in 68 O.S.1951 § 1251d, that tends to limit said phrase.

In 68 O.S.1951 § 1251a(c), the word "sale" is defined as follows:

"(c) Sale: The term 'sale' is hereby declared to mean the transfer of either the title or possession of tangible personal property for a valuable consideration, regardless of the manner, method, instrumentality or device by which such transfer is acomplished. The term 'sale' is also declared to include the exchange, barter, lease or rental of tangible personal property where such exchange, barter, lease or rental results in either the transfer of the title or the possession. The term 'sale' is hereby declared to include the disposition for consumption or use in añy business or by any person of all goods, wares, merchandise or property which has been purchased for resale, manufacturing or further processing. The term 'sale' shall include also the sale, giving away, exchanging or other disposition of admission, dues or fees to clubs, to places of amusement, recreational, or athletic events, or for the privilege of having access to or the use of amusement, recreational, athletic or entertainment facilities. The term 'sale' shall not include the furnishing or rendering of service or services, except as is herein otherwise provided."

It was pointed out in General Tire Co. v. Oklahoma Tax Commission, 188 Okl. 607, 112 P.2d 407, that the statutory definition of the word sale is very "comprehensive."

In Ford v. Oklahoma Tax Commission, Okl., 285 P.2d 436, 437, this was said about the statutory definition of the word sale.

"We may not speculate as to a probable intent of the Legislature apart from the words of the statute. 'Sale' is defined in statute, and unless there is doubtfulness, doubleness of meaning, or indistinctness or uncertainty of meaning of the language and expression used in defining sale, the statute is to be applied, and not interpreted, since the statute speaks for itself. * * *."

One of Magnolia's contentions appears to be that the legislature did not intend to levy a sales tax on gross proceeds arising from a casual or isolated sale of tangible personal property. If this case had arisen under the provisions of the 1935 Sales Tax Act, said contention would be well taken. In the 1935 Sales Tax Act, the word "sale" was defined to mean any transaction by which tangible personal property was transferred for a consideration in the ordinary course of the transferrer's business; however, in 1941 (S.L.1941, P. 383) the section of the Sales Tax Act defining the word sale, Sec. 1251a(c), supra, was amended to read as it now reads. In view of this amendment and the wording of the other portion of the Sales Tax Act, it is clear that the legislature intended to levy a sales tax on gross proceeds arising from a casual or isolated sale of tangible personal property.

In connection with its contention that a sales tax is not levied on gross proceeds arising from casual or isolated sales, Magnolia cites and stresses State v. Dyson, 89 Ga.App. 791, 81 S.E.2d 217, and Geneva Steel Co. v. State Tax Commission, 116 Utah 170, 209 P.2d 208. In Market Street Railway Co. v. California State Board of Equalization, 137 Cal.2d 87, 290 P.2d 20, 27, it was pointed out that "(T)he rationale of the Georgia cases is that the Georgia statute was not intended to apply to casual and isolated sales by retailers, but only applied to sales made in the regular course of business." In the Geneva Steel Co. case, the court pointed out at page 211 of 209 P.2d that "isolated or occasional sales made in this state (Utah) are not subject to * * * tax." The court also points this out at page 213 of 209 P.2d.

"* * * *We do not mean to imply that a person can avoid paying the tax on the sale of an article of personal property justly due by combining it with the sale of real property for a lump sum price.* We only hold the leg-

islature did not intend to tax the sale of personal property transferred as a component part of the sale of an integrated business." (Emphasis ours.)

The material difference in the statutes involved in the Dyson and Geneva Steel Co. cases and the statute involved in this case readily serves to distinguish said cases.

■■ The sales tax levy is broad and comprehensive, and as pointed out in Ford v. Oklahoma Tax Commission, supra, "we may not speculate as to a probable intent of the Legislature apart from the words of the statute." The sale in controversy is unquestionably within the compass of said levy, and it is not our privilege to say that the levy does not apply to the transaction under consideration because it involves a sale for a lump sum of both real and personal property or because the major portion of the payment is attributable to the sale of real property. The foregoing construction tends to insure a just and uniform operation of the sales tax levy which as held in Magnolia Pipe Line Co. v. Oklahoma Tax Commission, 196 Okl. 633, 167 P.2d 884, is one of the primary rules of statutory construction.

Magnolia asserts that since Kewanee following the sale owned a joint interest in the tangible personal property sold with others, the transaction in controversy is exempt from sales tax under the following quoted provisions of 68 O.S.1951 § 1251d:

"There is hereby specifically exempted from the tax imposed by this Act the gross receipts or gross proceeds derived from the:

"(s) Sale of an interest in tangible personal property to a partner or other person who after such sale owns a joint interest in such tangible personal property where the Oklahoma Sales or Use Tax has previously been paid on such tangible personal property."

■ The Tax Commission has uniformly construed the above quoted subsection as not applying where a vendee does not own a joint interest with the vendor in the property sold following the sale, and this is also the construction that the trial court placed upon said subsection. We are of the opinion that the trial court and the Tax Commission properly construed subsection (s). The phrase "other person" is preceded by the word "partner," therefore, under the well-established rule of ejusdem generis to the effect that where "general words will ordinarily be presumed to be, and construed as, restricted by the particular designation and as including only things or persons of the same kind, class, character, or nature as those specifically enumerated" (50 Am.Jur., "Statutes," Sec. 249, p. 244), the phrase "other person" must be construed as meaning a person whose relationship to the vendor following the sale is in the nature of a partner such as a joint adventurer or co-adventurer. In King v. Oklahoma Tax Commission, 194 Okl. 357, 151 P.2d 918, 920, the taxpayer contended that the surrendering of a promissory note to the payor thereof represented an "other disposition" within the meaning of the phrase "sale or other disposition" as that phrase is used in 68 O.S.1951 § 883(d) (2) of the Income Tax Act. It was there held that the phrase "other dispositions" under the rule of ejusdem generis only applied to "such dispositions of property as are like sales." If the phrase "other person" was intended to include only joint adventurers or co-adventurers, it is obvious that the legislature intended that only a sale to a partner or a joint adventurer or co-adventurer be exempt from sales tax, and since Kewanee did not stand in said relationship to Magnolia either before or after the sale the provisions of subsection (s) do not apply. In view of the well-established rule that tax exemption statutes are strictly construed against the person asserting an exemption, we are not privileged to give subsection (s) the broad and liberal construction contended for by Magnolia, which construction we do not believe to be in keeping with the wording of the subsection.

The judgment of the trial court is affirmed.