HOWARD PORE, INC., *v.* STATE COMMISSIONER
OF REVENUE.

1. MANDAMUS—SUPREME COURT—REFERENCE TO TAKE PROOFS.

In original mandamus proceeding in Supreme Court in which plaintiffs' reply denies many averments of fact in defendant's answer and neither party made a request for a reference to take proofs, the Court must determine the matters at issue on the basis of record as made and in light of established principles applicable in mandamus proceedings.

2. SAME—RIGHT TO RELIEF MUST BE CLEAR.

In mandamus proceedings the relief sought may not properly be granted unless the right thereto clearly appears.

REFERENCES FOR POINTS IN HEADNOTES

[1] 35 Am. Jur., Mandamus, § 373.

[2] 34 Am. Jur., Mandamus, § 32.

[3] 47 Am. Jur., Sales and Use Taxes, § 2.

[5, 6, 8, 16] 50 Am. Jur., Statutes, § 223.

[8, 17] 50 Am. Jur., Statutes, §§ 227, 228.

[9, 10, 13–15] 47 Am. Jur., Sales and Use Taxes, § 15.

[10, 13–15, 18] Computation of sales tax, 107 A.L.R. 267; 135 A.L.R. 1485; and 150 A.L.R. 1311.

[11, 25] 47 Am. Jur., Sales and Use Taxes, § 38.

[12] 42 Am. Jur., Public Administrative Law, §§ 78, 82; 50 Am. Jur., Statutes, § 318.

[12] Administrative or practical construction of statute as precedent for judicial construction, 73 L. Ed. 323; and 84 L. Ed. 28.

[16] 50 Am. Jur., Statutes, § 225.

[18] 50 Am. Jur., Statutes, § 228.

[20] 42 Am. Jur., Public Administrative Law, §§ 31, 85.

[21] Burden of proof as to amount for which dealer is liable under sales tax or tax based on amount sold or offered for sale, 39 A.L.R. 273.

[21, 22] 47 Am. Jur., Sales and Use Taxes, §§ 37, 39.

[23] 34 Am. Jur., Mandamus, § 82.

[24] 42 Am. Jur., Public Administrative Law, § 150.

[24] Necessity of some evidence at hearing to support decision of public board or official required to be made after or upon hearing, 123 A.L.R. 1349.

3. Taxation—Sales Tax.

Under the general sales tax act the tax is levied for the privilege of carrying on business (Act No. 167, Pub. Acts 1933, as amended). ·

4. Same—Computation of Sales Tax.

The general sales tax is computed on the basis of gross proceeds of the business in which the taxpayer is engaged (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

5. Statutes—Construction—Intent.

The basic rule of construction of a statute is to ascertain and give effect to the legislative intent.

6. Same—Intent.

Where the language of a statute is clear and unambiguous, the intent so manifested must be recognized.

7. Taxation—Sales—Gross Proceeds—Computation of Tax.

Under general sales tax act imposing a tax on "gross proceeds" of sales of tangible personal property and defining "gross proceeds" as "the amount received in money, credits, property or other money's worth in consideration of sales at retail" without deduction for cost of property or materials used, labor or services purchased, amounts paid for interest or discounts or any other expenses or losses but allowing credits or refunds for returned goods, the tax must be determined on the basis of what the seller has received, in money, property or other thing of value, by way of consideration for the sale (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

8. Statutes—Courts.

It is the duty of a Court to apply a statute as it is enacted.

9. Taxation—General Sales Tax—Rules and Regulations—Valuation of Used Merchandise.·

Amended rules and regulations of department of revenue pertaining to computation of general sales tax on a sale at retail of new merchandise in which used merchandise was transferred in part payment and requiring that determination as to the value of the property traded in which must be made a part of the seller's records must not be less than the wholesale value at the time of making the sale *held*, designed to insure payment to the State of the full amount of the tax where there was an intentional undervaluation of the used merchandise (Act No. 167, § 1, Pub. Acts 1933, as. amended by Act

No. 59, Pub. Acts 1941; Sales Tax Regulation 10 and Rule 4, as amended March 5, 1948).

10. SAME—GROSS PROCEEDS—CONSIDERATION—VALUE.

"Gross proceeds," as that term is used in the general sales tax act, is construed to mean the sum of money, if any, received by the seller, together with the value of the property likewise received, such value to be determined in a manner designed to bring about a fair and reasonable result (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

11. SAME—SALES TAX—STATUTES—ADMINISTRATIVE ACTION.

The liability for the payment of sales taxes and the determination of the amount thereof depend upon statute and may not be imposed nor the liability therefor obviated by administrative action on the part of those charged with enforcing the law (Act No. 167, Pub. Acts 1933, as amended).

12. STATUTES—CONSTRUCTION—ADMINISTRATIVE INTERPRETATION.

While the construction given to a legislative enactment by those charged with the duty of administering it is entitled to respectful consideration, especially when the statute is ambiguous, such administrative interpretation is not binding on the court and must be rejected if not in accord with the intent of the legislature.

13. TAXATION—GENERAL SALES TAX—DEFINITION OF GROSS PROCEEDS.

The definition of the term "gross proceeds" in the general sales tax act is not ambiguous and taxes are determinable accordingly (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

14. SAME—SALES FOR CASH—PROPERTY AS CONSIDERATION.

In the enactment of the general sales tax act it is not to be assumed the legislature intended to discriminate between sales for cash and those where the consideration is wholly or partly in property so that the tax paid by the licensee in the latter instance is on less than the full consideration (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

15. SAME—AMENDMENT OF GENERAL SALES TAX ACT—GROSS PROCEEDS—ORIGINAL AND SUBSEQUENT SALES.

Amendment of provision of the general sales tax act defining "gross proceeds" with respect to sales after the original sale at retail *held,* not to have constituted a legislative interpretation of "gross proceeds" as to original sale, where portion of

definition as to such sale remained unchanged (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

16. STATUTES—CONSTRUCTION.

If the language of a statute is plain and free from ambiguity, and expresses a single, definite, and sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey.

17. SAME—CONSTRUCTION OF AMENDMENTS.

The amendments to a statute must be construed in the light of their evident purpose.

18. TAXATION—AMENDMENT OF GENERAL SALES TAX ACT—SALES OF NEW AND TRADED-IN MERCHANDISE.

Where, in amending the general sales tax act as to subsequent sales of traded-in merchandise, the legislature did not change or modify the collection of the retail sales tax on new merchandise, the Supreme Court may not by implication read any modification as to such latter sales into the statute (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

19. COURTS—CONSTRUCTION OF OPINIONS.

In construing the opinion of a court, the statements made therein must be read in the light of the facts and issues involved in the case under consideration and should not be interpreted as going beyond the scope of the matters before the court for adjudication.

20. TAXATION—GENERAL SALES TAX—DETERMINATION OF VALUE OF PROPERTY FORMING PART OF GROSS PROCEEDS.

Officials enforcing the general sales tax act are not precluded from inquiring into the actual facts for the purpose of determining the value of the property received by a dealer and constituting part of the gross proceeds of the sale (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

21. SAME—TAX-EXEMPT MERCHANDISE—BURDEN OF PROOF.

Where the amount of a vendor's gross proceeds from sales at retail are known, the burden rests upon such vendor to show what part, if any, of such proceeds resulted from sales of tax-exempt merchandise (Act No. 167, § 1, Pub. Acts 1933, as amended by Act No. 59, Pub. Acts 1941).

22. SAME—RECOVERY OF DEFICIENCIES IN PAYMENT OF SALES TAX.
Where there is liability for payment of tax on sales at retail in excess of payments actually made, proceedings for the recovery thereof may be taken, subject to express provisions of the general sales tax act, irrespective of fact that liability existed before amendments to rules and regulations of the department of revenue (Act No. 167, § 9, Pub. Acts 1933, as amended by Act No. 313, Pub. Acts 1939).

23. MANDAMUS—PUBLIC QUESTION.
Original mandamus proceeding by a taxpayer under the general sales tax act was a proper remedy to pursue in an attempt to test the legality of action taken by the commissioner of revenue in enforcing the general sales tax act, where the action involved concerns not only the particular plaintiffs but, also, the State and the public generally and early determination of matter at issue was desirable from standpoint of public policy (Act No. 167, Pub. Acts 1933, as amended).

24. OFFICERS—QUESTIONS OF FACT—EVIDENCE.
Questions of fact presented to officer in the course of his administration of a law must be determined on the basis of competent proof.

25. CONSTITUTIONAL LAW—COMMISSIONER OF REVENUE—POWER.
The general sales tax law does not vest arbitrary power in the commissioner of revenue who is charged with its enforcement (Act No. 167, Pub. Acts 1933, as amended).

26. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES.
No costs are allowed in original mandamus proceeding involving construction of the general sales tax act, where public question is involved (Act No. 167, Pub. Acts 1933, as amended).

DETHMERS, J., dissenting.

Petition by Howard Pore, Inc., for a writ of mandamus to compel Louis M. Nims, State Commissioner of Revenue of the State of Michigan, to rescind, abrogate and cancel an amendment of a regulation adopted March 5, 1948, relating to determination of tax payable on sales of new articles involving the turning in of used articles. Submitted April 16, 1948. (Calendar No. 44,067.) Writ denied September 8, 1948.

*Clark, Klein, Brucker & Waples, Wilber M. Brucker* and *Robert A. Sullivan,* for petitioners.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Victor H. Meier,* Assistant Attorney General, and *W. Ralph Delaney,* Special Assistant Attorney General, for defendant.

CARR, J. The general sales tax law of the State, Act No. 167, Pub. Acts 1933, as amended,* imposes, subject to specified exceptions and deductions, an annual privilege tax on all persons engaged in the business of making sales of tangible personal property at retail. The amount of such tax is determined on the basis of 3 per cent. of the gross proceeds of such sales. Section 1 of the statute as originally enacted defined the term "gross proceeds" as follows:

"(c) The term 'gross proceeds' means the amount received in money, credits, property or other money's worth in consideration of sales at retail within this State, without any deduction on account of the cost of the property sold, the cost of materials used, the cost of labor or services purchased, amounts paid for interest or discounts, or any other expenses whatsoever, nor shall any deduction be allowed for losses. Credits or refunds for returned goods may be deducted."

The subdivision quoted was amended by Act No. 313, Pub. Acts 1939, and Act No. 59, Pub. Acts 1941, by adding thereto certain provisos, but without changing the language as above set forth. Consideration will be hereinafter given to the effect of said amendments.

---

* Amended by Act No. 77, Pub. Acts 1935, Acts Nos. 123, 180, 313, Pub. Acts 1939, Acts Nos. 59, 122, 249, 338, Pub. Acts 1941, Act No. 29, Pub. Acts 1943, Acts Nos. 259, 267, Pub. Acts 1945 (Comp. Laws Supp. 1940, 1945, § 3663–1 *et seq.,* Stat. Ann. and Stat. Ann. 1947 Cum. Supp. § 7.521 *et seq.*).

The plaintiffs in the instant case (other than the two associations named in the caption) are licensed automobile dealers carrying on business in this State. The defendant is the State commissioner of revenue and as such is charged with the administering of the sales tax law and empowered to adopt rules and regulations for its enforcement. Under date of March 5, 1948, defendant adopted an amendment to the prior regulation concerning the determination of the taxes payable to the State on retail sales of new articles of merchandise, made in the course of business, involving the turning in by purchasers of used or secondhand articles by way of part consideration. The regulation, as so amended, contemplates the fixing of the gross proceeds of such a transaction on the basis of the actual value of the trade-in received by the dealer. At the same time defendant adopted amendments to the prior rule with reference to the method of computing the taxes on transactions of such character involving sales of new automobiles. Plaintiffs contend that the contemplated method of determining the amount of the sales tax is not, as applied to the sale of a new automobile when a used or secondhand car is taken in part payment, in conformity with the statute. They ask in their petition that defendant be required by writ of mandamus to rescind the amendments in question to the rules and regulations of the department and determine the amount of the sales tax, in each instance of the character stated, on the basis of the cash payment received by the dealer plus the credit, if any, allowed by him for the used car turned in by the purchaser. The claim of plaintiffs is summarized in their brief as follows:

"It is the position of plaintiffs that the term 'gross proceeds' as set forth in subsection (g) makes it the statutory duty of defendant in the case of retail sales of chattels, paid partly in cash and partly in

used merchandise, to collect retail sales tax on the price fixed by the parties, with the used merchandise being accepted at the figure fixed by the buyer and seller. It is plaintiffs' further position that if defendant is permitted to enforce the regulations promulgated by him under date of March 5, 1948, which in the case of sales at retail, partly in cash and partly in used merchandise, would result in a collection of sales tax upon the sum of money paid and the actual market value of the secondhand article, he would not be following his statutory obligations in regard to the collection of sales taxes. If plaintiffs' contentions, as outlined in this brief, are accepted by the court and the term 'gross proceeds' is construed in the case of a sale of a chattel at retail partly for cash and partly for used merchandise, to mean cash plus the value of the used commodity as agreed by the parties, it is clear that defendant is not following the positive provisions of the statute in promulgating and enforcing the new and revised regulations, which admittedly are based upon a market-value concept instead of agreed-value concept."

Defendant filed his answer to the petition of the plaintiffs, denying the right to the relief sought. He contends in substance that the statutory definition of the term "gross proceeds" must be construed as meaning the actual consideration received, whether in property or money, by the dealer by way of payment for the article sold, that the legislature in the enactment of the statute intended such result, and that in consequence a used article of merchandise turned in by the purchaser by way of part compensation for the new article must be fairly and reasonably valued for the purposes of the computation of the State tax. The answer further alleges that the practice has recently grown up in the automobile business of taking in a used car on the sale of a new machine on the basis of a credit representing a

fractional part only of the actual value. It is further asserted in the answer that dealers in new automobiles refuse to make a sale unless a second-hand car is turned in on the transaction. In substance it is the position of the defendant that under this practice there is no attempt to reach a fair valuation of the used car, and that certain dealers are taking advantage of the desires and necessities of purchasers and are in practical effect selling new cars for considerations in excess of the manufacturers' list prices and in excess of the selling prices reported to the State under the general sales tax law. It is insisted also by defendant that the amendments to the rules and regulations that plaintiffs seek to have rescinded were not intended to change, and did not in fact actually change, the prior rules and regulations, and that the sole purpose of their adoption was to clarify the procedure to be followed in computing the tax on transactions where said articles of merchandise are received by a dealer on the basis of an arbitrary credit not fairly and reasonably commensurate with their actual value.

In their reply plaintiffs deny in general terms many of the averments of fact set forth in the answer. However, no request for a reference to take proofs has been presented by counsel on either side of the case. We must in consequence determine the matters at issue on the basis of the record as made and in the light of established principles applicable in mandamus proceedings. Under such established principles the relief sought may not properly be granted unless the right thereto clearly appears. See *Rupert* v. *Van Buren County Clerk,* 290 Mich. 180; *Powers* v. *Secretary of State,* 309 Mich. 530.

It is evident that the gist of the controversy is whether the "agreed value," or the "actual value" determined on a fair and reasonable basis, of the property turned in by the purchaser, is to be used

in computing the amount of the tax in instances of the character here involved. The question at issue is primarily one of statutory construction. The legislature provided for the computation of the sales tax on the basis of the gross proceeds of the business in which the taxpayer is engaged, said tax being on the privilege of carrying on business. *Montgomery Ward & Co., Inc.,* v. *Fry,* 277 Mich. 260; *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659. The term "gross proceeds" was defined, in the provision of the statute above quoted, in clear and definite terms. The basic rule of construction is to ascertain and give effect to the legislative intent. The language used being clear and unambiguous, the intent so manifested must be recognized. *City of Grand Rapids* v. *Crocker,* 219 Mich. 178; *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282 (98 A. L. R. 827); *Gardner-White Co.* v. *State Board of Tax Administration,* 296 Mich. 225.

Giving to the language used by the legislature its ordinary meaning, the conclusion follows that the amount due the State on each taxable transaction of the character in question must be determined on the basis of what the seller has received, in money, property, or other thing of value, by way of consideration for the sale. Had it been intended to permit the payment of the tax on the basis of cash received and the credit for property taken in part payment at an agreed amount arrived at without any attempt at a fair valuation, we think appropriate language to indicate such intent would have been used. The duty of the court is to apply the statute as enacted. It must be borne in mind that in the instant case we are not dealing with transactions in which the parties to a sale undertake by some reasonable method to arrive at the fair value of the property received by the seller, or with instances in which a subsequent sale of the articles

traded in discloses that the amount allowed was either greater or less than the actual selling value at the time of the resale. Rather we are concerned with transactions involving the intentional undervaluation of the used property that the purchaser delivers in part payment. The amended rules and regulations adopted by defendant, which plaintiffs assail, were, it appears, designed to apply to transactions of the latter character and to insure the payment to the State of the full amount of the tax contemplated by the statute. It is our conclusion that the term "gross proceeds," as the legislature has defined it, must be construed to mean the sum of money, if any, received by the seller, together with the value of the property likewise received, such value to be determined in a manner designed to bring about a fair and reasonable result.

In many instances courts have had occasion to construe statutes relating to taxation of the same character as the Michigan general sales tax law. Such decisions, though involving facts of a different nature than are here presented, tend to indicate the rules of interpretation considered to be applicable. In *Combined Metals Reduction Co.* v. *State Tax Commission,* 111 Utah, 156 (176 Pac. [2d] 614), a somewhat analogous question was presented. There the plaintiff companies were assessed under a State statute providing for the payment of an occupation tax equal to 1 per cent. of the gross amount received for ore sold by them. In order to encourage mining operations the Federal war production board and the O.P.A. evolved a plan under which the Metals Reserve Company was authorized to buy copper, lead and zinc at prices above those fixed by the O.P.A. regulations, and to make "premium payments" for metals produced in excess of the quota assigned to each mining company. The question at issue was whether the amount of such premiums

should be taken into consideration in determining the occupation tax under the statute. The defendant State tax commission made its assessment on the total amount received by the plaintiff companies, including the premiums for excess production. The amounts so assessed were paid under protest, and suit brought to recover. The supreme court of the State upheld the defendant in its position, holding that the premiums constituted a part of what the plaintiffs received for their products.

In *State, ex rel. Sioux Falls Motor Co.,* v. *Welsh, as Director of Taxation,* 65 S. D. 68 (270 N. W. 852), the issue was whether the plaintiff automobile dealer was properly assessed under the sales tax law of the State on the basis of the property as well as the money received by him in a certain transaction involving the sale of a new automobile. It does not appear that there was any claim in the case that the property was taken by the dealer on any basis other than a fair and reasonable value. Rather it was asserted by the plaintiff, who brought action to compel a tax refund, that he ought not to be taxed at all on the value of the secondhand car that he had received from the purchaser. In holding that plaintiff was not entitled to recover, it was said:

"The fact must be kept in mind that the tax with which we are dealing is an excise or privilege tax imposed upon the privilege of engaging in an occupation. It is not a tax upon gross receipts as such, but gross receipts as defined in the law is used as a measure to determine the amount of tax to be paid for the privilege of engaging in an occupation or business. The legislature might have used any one of a number of other standards for determining the amount of the tax to be paid. However, the legislature has seen fit to use as its standard that which is referred to in the law as 'gross receipts.' This term 'gross receipts' has been defined by the

law itself, and this court, of course, must accept the definition of the legislature. Under that definition 'gross receipts' is not limited to the money actually received in consideration for a sale at retail, but includes 'property or other money's worth' received in consideration of such sale. We are of the opinion that the sale of each car by relator, whether that car be new or old, was a sale at retail within the meaning of the law, and that the value of each used car accepted as a part consideration for such sales comes within the meaning of 'gross receipts' as that term is defined."

The further claim that the act, if construed as claimed by the State director of taxation, discriminated against automobile dealers, was answered by pointing out that if the sales tax law operated more stringently on one class of retailers than on others, such situation resulted from the manner in which the automobile business was conducted, and that there was no discrimination in the obnoxious sense in that all similarly situated were treated alike. It will be noted that the court specifically stated that the "value" of each used car turned in in part payment for a new automobile must be regarded as part of the gross receipts of the sale. As stated, it was apparently assumed that in the transaction out of which the case arose the used car was turned in on a proper valuation.

Of like import is *Warshawsky & Co.* v. *Department of Finance*, 377 Ill. 165 (36 N. E.[2d] 233). There the plaintiff appealed from an assessment made by the defendant under the provisions of the retailers' occupation tax act of the State. In determining the issues involved contrary to the claims of the plaintiff, the court pointed out that the tax in question was computed, under the terms of the statute, on the basis of gross receipts from the sale of tangible property at retail, that the term "gross

receipts" was further defined as the "total selling price or the amount of such sales," and that by "selling price" was meant "the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, services and property of every kind or nature and shall be determined, without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost, or any other expense whatsoever." It was said:

"The value of the property traded in is a part of the selling price, as defined in section 1 of the act, *supra*. Rule No. 15 also so provides but gives the taxpayer the option to wait until this traded-in property is resold before including the value of it in his return. Here, there is no showing that the taxpayer did or did not take advantage of this option."

Plaintiffs contend that prior to the adoption of the amended regulation and rule involved in this case the officials of the State charged with the enforcement of the general sales tax act construed the statute in accordance with the claims of plaintiffs herein. It may be noted in this regard that regulation No. 10, effective as of December 31, 1943, followed very closely the language of the legislative definition of the term "gross proceeds." Said regulation read as follows:

"The terms 'gross proceeds,' 'gross sales,' or 'gross receipts' used herein mean the total of all sales made during a given month or period. It means the amount received or to be received in money, credits, property or other money's worth in consideration of sales at retail within this State, without any deduction on account of the cost of the property sold, the cost of materials used, the cost of labor or services purchased, amounts paid for interest or discounts, or any other expenses what-

soever, nor shall any deduction be allowed for losses."

This regulation was amended on March 5, 1948, by adding thereto the following:

"When credits, property or other money's worth become or becomes all or part of the consideration then the dollar value of such credits, property or other money's worth must be determined and made part of the sellers' records. Such determination is only acceptable for sales tax purposes when the dollar value is not less than the wholesale dollar value of the trade-in at the time of making the previously mentioned retail sale."

Rule 4, which was effective at the same time as was the above regulation, applied specifically to automobile dealers and contained the following provision:

"Upon the sale of a new car or a used car purchased for sale, the tax applies to the total amount of the sale and no deduction is allowed for another car taken in trade on such transaction. However, when such traded-in car is resold, the sales tax applies to the full amount of the sale of such traded-in car (and not upon the amount originally allowed for the trade-in), less the amount allowed for a further trade-in on such transaction."

This provision was amended by defendant on March 5, 1948, by inserting therein after the word "transaction" the following:

"The total amount of the sale means amount received in money, credits, property or other money's worth. When credits, property or other money's worth become or becomes all or part of the consideration then the dollar value of such credits, property or other money's worth must be determined and made part of the sellers' records. The trade-in value of a motor vehicle shall, for sales tax purposes and

until further amendment or revision of this rule, be not less than its wholesale dollar value at time of trade as shown in the current issue of 'Car and Truck Appraisals,' published by the American Auto Appraisal, 194 Grove, Detroit 3, Michigan, and designated by the Federal reserve board for corresponding appraisal purposes in Michigan and other States."

Rule 4 as previously worded further required that the books of a dealer should show the trade-in value of a motor vehicle accepted in trade, which value should not be less than the average loan value at time of sale as shown by some reliable used-car guide. This provision was changed, in connection with other amendments above referred to, so as to provide that the trade-in value of each motor vehicle received by the dealer should, for sales tax purposes, be not less than its wholesale dollar value at time of trade as shown by the publication referred to in the amendment to Rule 4, above quoted. Plaintiffs, in their petition challenged the acceptance of such publication as an absolute standard, on the theory that it amounted to an improper delegation of power to a private organization. After the filing of the petition, and on April 14, 1948, the regulations were further amended to permit dealers to use said publication as a guide, or to use a "similar equally reliable used-car guide," in reporting the values of trade-ins. Obviously by such amendment the defendant undertook to obviate the legal objection to the regulations as previously adopted, and to provide also a method by which dealers might simplify the determination of used-car values for the purposes of sales tax returns.

As before noted, defendant contends that the amendments to the rule and to the regulation, which plaintiff seeks to have rescinded, were not intended to, and in fact did not, alter the prior method of com-

puting and collecting taxes on the sales of new auto-
mobiles. It is insisted that the sole purpose was to
clarify the situation resulting from the practice fol-
lowed by some dealers of taking in used automobiles
in part payment for new cars on the basis of stipu-
lated credits materially and intentionally less than
actual values. There is, we think, much force in
defendant's claim. As plaintiffs point out in their
brief, the automobile market for many years pre-
ceding 1945 was a so-called "buyer's market." In
other words, conditions were such that one desiring
to purchase a new car could do so, and, if he wished
to trade in a used car in part payment, he could ob-
tain therefor an allowance at least equal to its value.
Also, a new car could be purchased without turning
in a used car. Under such circumstances it is appar-
ent that a purchaser would not knowingly agree to
a value materially less than the actual value of the
used car turned in, and no claim is made that dealers
observed any practice of consenting to trade-in val-
ues at figures materially higher than actual values.
The record before us does not indicate that there
was any reason for assuming, during the years pre-
ceding 1945, that automobiles traded in in part pay-
ment for new cars were not reasonably valued. It
is conceded that, since 1945, the situation has radi-
cally changed and we now have what may be aptly
designated as a "seller's market" in the automobile
business. It is not illogical that the proper enforce-
ment of the sales tax act, and the collection of the
taxes thereby imposed, necessitated changes in the
rules and regulations of the department of revenue.
In any event, the liability for the payment of taxes,
and the determination of the amount thereof, de-
pend on the statute. Such liability may not be im-
posed by rules or regulations of the department.
*Acorn Iron Works, Inc.,* v. *State Board of Tax
Administration,* 295 Mich. 143 (139 A. L. R. 368).

By the same process of reasoning, liability for a tax imposed by statute may not be obviated by administrative action on the part of those charged with enforcing the law.

The construction given to a legislative enactment by those charged with the duty of administering it is entitled to respectful consideration, especially so when the statute is ambiguous in its provisions. However, administrative interpretation is not binding on the court and must be rejected if not in accord with the intent of the legislature. *Boyer-Campbell Co.* v. *Fry, supra; City of Wyandotte* v. *State Board of Tax Administration,* 278 Mich. 47; *Rudolph Wurlitzer Co.* v. *State Board of Tax Administration,* 281 Mich. 558; *Wayne County Board of Road Commissioners* v. *Wayne County Clerk,* 293 Mich. 229. In view of the situation here presented we do not think it can fairly be said that the State department of revenue has ever interpreted the provision of the general sales tax act involved here as plaintiffs contend it should be interpreted. As a practical proposition, conditions existing prior to the past two or three years were not such as to reasonably evoke any such interpretation. There was, in other words, no occasion therefor. Furthermore, the language of the statute is controlling. The definition of the term "gross proceeds" therein contained is not ambiguous. Taxes under the statute are determinable accordingly. The interpretation contended for by plaintiffs would result in discrimination in the computation of the tax as between sales for cash and sales where the consideration is paid wholly or partly in property. In the one case the tax would be paid by the dealer concerned on the basis of the full consideration received while in the second instance such result would not follow. For reasons that are self-evident, it may not be assumed that the legislature contemplated any such discrimination.

Section 1, subdivision (c) (now subdivision [g]), of the general sales tax law, was amended by Act No. 313, Pub. Acts 1939, by adding thereto the following:

"Provided, however, that after original sale at retail of tangible property, upon which the full tax has been paid, when used tangible personal property of like kind and nature is taken in exchange or part payment of the consideration of a sale at retail, and such property is, or is to be held by the taxpayer for the purpose of resale in the form of personal property, the credit allowed on account of such trade-in shall not be included as part of the gross proceeds of sale: Provided, That said taxpayer shall be liable for the privilege tax, imposed under this act, on the full credit allowed, such liability to attach at the time of the resale of the property, so taken, and the resale of said property shall be considered a sale at retail under the provisions of this act."

By Act No. 59, Pub. Acts 1941, the previous amendment was modified to some extent and the subsection re-enacted so that it now reads as follows:*

"The term 'gross proceeds' means the amount received in money, credits, property or other money's worth in consideration of sales at retail within this State, without any deduction on account of the cost of the property sold, the cost of materials used, the cost of labor or services purchased, amounts paid for interest or discounts, or any other expenses whatsoever, nor shall any deduction be allowed for losses. Credits or refunds for returned goods may be deducted: Provided, however, That after original sale at retail of tangible property, upon which the full tax has been paid, when used tangible personal property of like kind and nature is taken in exchange or part payment of the consideration of a

* Comp. Laws Supp. 1945, § 3663–1(g), Stat. Ann. 1947 Cum. Supp. § 7.521(g).

sale at retail, and such property is, or is to be held by the taxpayer for the purpose of resale in the form of personal property, the credit allowed on account of such trade-in shall not be included as part of the gross proceeds of sale: Provided, That said taxpayer shall be liable for the privilege tax, imposed under this act, based on the resale price less the credit allowed on account of any trade-in of tangible personal property of like kind and nature, such liability to attach at the time of the resale of the property, so taken, and the resale of said property shall be considered a sale at retail under the provisions of this act."

It is the claim of the plaintiffs that these amendments should be regarded as a legislative interpretation of the definition of "gross proceeds" as originally enacted by Act No. 167, Pub. Acts 1933. With this contention we are unable to agree. The amendments in terms related to sales after the original sale at retail. Under the subsection as originally enacted the subsequent sale was taxed in the same manner as was the sale of the new article. The legislature saw fit to alleviate the burden to some extent by providing that on such resale the amount of "credit allowed" for a trade-in might be deducted from the gross proceeds of the sale for the purpose of computing the tax. It is significant, however, that no such provision was made with reference to the sale of a new article in the first instance. Clearly it was the intention of the legislature to leave such original sale subject to taxation on the basis of the gross proceeds thereof received by the dealer.

In *McCanless Motor Co.* v. *Maxwell,* 210 N. C. 725 (188 S. E. 389), a similar question of statutory construction was presented. There the statute under consideration exempted from the sales tax the selling price of a secondhand or used automobile taken as part consideration for the sale of a new automo-

bile. No such provision was made with reference to resales, but it was contended that by implication the rule should be applied to a transaction involving the sale of a used car when another used car was received in part payment. The court, however, declined to place such interpretation on the statute, saying in part:

"The express wording of the exempting subsection of the statute, taken in its ordinary and commonly accepted meaning, includes only sales of secondhand or used articles taken in part payment in the sales of new articles, and does not include sales of secondhand or used articles taken in part payment of other secondhand or used articles, although such last mentioned articles had been taken in part payment of the sales of new articles.

"There is really no ambiguity in the wording of the exempting subsection of the statute. * * * It expresses plainly and clearly the intent of its framers and there is no occasion to resort to any means of interpretation other than to follow such intent. 'This meaning and intention must be sought first of all in the language of the statute itself. For it must be presumed that the means employed by the legislature to express its will are adequate to the purpose and do express that will correctly. If the language of the statute is plain and free from ambiguity, and expresses a single, definite, and sensible meaning, that meaning is conclusively presumed to be the meaning which the legislature intended to convey.' *School Commissioners* v. *Aldermen,* 158 N. C. 191, 196 (73 S. E. 905)."

The language quoted is applicable to the case at bar. The amendments to the quoted subsection of the Michigan statute must be construed in the light of their evident purpose. Had the legislature intended to change or modify in any way the collection of the retail sales tax on the sale in the regular course of business of a new article of merchandise,

it is a fair assumption that such intent would have been clearly expressed. This was not done and we may not by implication read any such modification into the statute.

Plaintiffs further contend that this Court in *Montgomery Ward & Co., Inc.,* v. *Fry, supra,* adopted a construction of the pertinent provision of the statute that is applicable to the situation presented on the record before us. It is insisted also in this connection that the legislature in re-enacting such provision in the amendatory acts of 1939 and 1941, did so in the light of such interpretation. In that case the plaintiff paid taxes, levied under the general sales tax law, under protest, and brought suit to recover. One of the items set forth in the declaration was based on the claim that plaintiff in selling certain automotive accessories had accepted secondhand articles in part payment on the basis of an arbitrary valuation; that the trade-ins so received were subsequently sold; that the loss sustained thereon on plaintiff's transactions within this State amounted to approximately $6,000; and that plaintiff was entitled to have deducted from its taxes a sum equal to 3 per cent. of such loss. The trial court denied recovery on this item. In upholding such action, this Court said:

"Count five seeks computation of the sales tax in case of sales at retail, partly in cash and partly in used merchandise, upon the sum of money paid and the actual market value and not the credit arbitrarily allowed for secondhand articles.

"Plaintiff appeals from a holding that the gross proceeds of such a sale is the sum of money received, plus the amount allowed the purchaser for such used article.

"The gross proceeds of such a sale constitutes the price fixed at the sale, paid in money in part and secondhand articles accepted at an arbitrary figure

by the seller. The loss, if any, in such transactions, as well as the profit, if any, is that of the plaintiff without any share therein by the State.

"In the circuit court plaintiff did not recover for this item and the judgment thereon is affirmed."

Plaintiffs argue that this Court in the language quoted laid down a broad interpretation of the statutory definition of the term "gross proceeds" which supports their contention in the case at bar. The statement of the court, however, must be read in the light of the facts and the issues involved in the case under consideration. The plaintiff's claim was that the subsequent sale of the trade-ins received by it in the course of business definitely fixed the value of such property as of the time of receipt by way of part consideration ·for new articles purchased. In substance the question at issue was whether plaintiff was bound by what it had ostensibly done in the course of its business or whether it could take advantage of the fact that a subsequent resale of the various articles taken in by it demonstrated that it had allowed too much therefor. It was held that for the purposes of computing the sales tax payable to the State the plaintiff was bound by what it had done and could not be heard to say that it had not received the consideration that it had ostensibly received in the various transactions as actually made.

A similar situation was involved in *Hawley* v. *Johnson, State Treasurer,* 58 Cal. App. (2d) 232 (136 Pac. [2d] 638), where the *Montgomery Ward Case, supra,* was cited. There the court referred to the fact that the parties "by bona fide agreement" had valued the property received by the dealer. Commenting on this situation it was said:

"In the give and take of the market place the value arrived at by the free negotiation of the parties may safely be relied upon to furnish a reasonable measure of the value in money of property traded in."

Obviously the California court proceeded on the assumption that the value of secondhand articles traded in in part payment for new merchandise is, under ordinary circumstances at least, reasonably valued by the parties. There was nothing in the case to indicate the contrary fact, nor was there in *Montgomery Ward & Co., Inc.,* v. *Fry, supra.* In the case at bar no claim is made by plaintiffs that secondhand automobiles accepted as trade-ins on new cars are so taken on the basis of any reasonable valuation or appraisal. Rather, the claim is that the State is precluded from inquiring into the actual facts for the purpose of determining the value of property received by a dealer and constituting part of the gross proceeds of the sale. We do not think that the legislature in the enactment of .the statute in question intended to impose any such limitation or restriction on public officials charged with the enforcement of the act.

As before suggested the language used in the opinion of this Court in *Montgomery Ward & Co., Inc.,* v. *Fry, supra,* must be construed in the light of the facts before the court and the issues presented on those facts. The opinion may not properly be construed as laying down a rule applicable in all cases involving the administering of the general sales tax law, without reference to the specific facts involved therein or the questions raised. Moreover, if the language quoted from the opinion is construed as applicable to a situation of the character presented in the case at bar, it must to that extent be regarded as dictum. As indicated, however, it should not be interpreted as going beyond the scope of the matters before the court for adjudication. The decision cannot be given the force and effect for which plaintiffs contend. *Keasey* v. *Engles,* 259 Mich. 178; *McNally* v. *Board of Canvassers of Wayne County,* 316 Mich.

551; *Stevenson* v. *Brotherhoods Mutual Benefit,* 317 Mich 575.

Plaintiffs also claim that if the amendments to the rules and regulations of the department of revenue are sustained they should be held inapplicable to past transactions, that is, to transactions occurring prior to March 5, 1948. For the reasons above indicated, the liability to the payment of the sales tax on the basis of the gross proceeds actually received by the dealer in each transaction exists by virtue of the statute. Such liability was not created by the rules and regulations of the department of revenue. *Acorn Iron Works, Inc.,* v. *State Board of Tax Administration, supra.* While it is true that the rules and regulations existing prior to the adoption of the amendment were apparently not intended to deal with a situation in which used property was taken in by a dealer in part consideration for the sale of new merchandise on the basis of an arbitrary credit substantially less than actual value, we do not think it can fairly be said that the amendments materially changed such prior rules and regulations, or sought to introduce any new principle into the method of computing the sales tax. Rather, they were designed to cover the new situation by which the officials charged with the enforcement of the general sales tax law were confronted. Their purpose was to indicate clearly the procedure to be observed in complying with the requirements imposed by the statute itself.

In *Obert* v. *Evatt, Tax Commissioner,* 144 Ohio St. 492 (59 N. E. [2d] 931), a similar question was involved. The statute before the court required vendors to keep accurate records of sales made by them and to preserve such records for a period of three years unless the public officials in charge of the enforcement of the act consented to their destruction within such period or required by order

that they be preserved for a longer period. It appears that no order requiring the preservation of the records for more than the prescribed time was made, and it was contended in consequence that the tax commissioner was estopped from making an assessment covering sales made during the prior period for which dealers were not required to preserve their records. In rejecting this contention, it was said:

"We are of the opinion that the tax commissioner is not estopped from making an assessment according to section 5546–12a, General Code, on account of sales made during a period prior to the three-year period even where the tax commissioner has failed to issue an order requiring vendors to keep their sales records for a period longer than three years."

It was further held, as stated in the syllabus prepared by the court:

"Where the amount of vendor's gross receipts from sales are known, the burden rests upon such vendor to show what part, if any, of such receipts resulted from sales of tax-exempt merchandise."

See, also, *E. C. Olsen Co.* v. *State Tax Commission,* 109 Utah, 563 (168 Pac. [2d] 324) where it was held that the failure of defendant commission to discover that plaintiff had not made payment as required by the sales tax law of the State did not preclude the collecting of the deficiency for the prior three-year period, which collection the commission was attempting to make. In so holding, it was said (p. 579):

"It will not be seriously contended that because the tax commission has for so many years omitted to assess and collect the tax on the questioned sales it is now precluded from performing that duty and from salvaging from its past omissions what it can for the State."

Plaintiffs' claim that deficiencies in sales tax payments on transactions of the nature here involved, made prior to the effective dates of the amendments to the rule and regulation of the department of revenue, may not now be assessed and collected, is not tenable. In instances where liability existed under the statute, in excess of payments actually made, proceedings for the recovery thereof may be taken subject to the express provisions of section 9* of the general sales tax law.

Defendant makes the claim, by answer and in his brief, that the determination in a mandamus proceeding of the issues here involved is improper. Such claim is based on the theory that any taxpayer who is required to pay a retail sales tax that he thinks is unauthorized may do so under protest and bring suit to recover. Reliance is placed on the general rule, which is not open to question, that mandamus is an extraordinary remedy and will not lie where there is other adequate remedy at law. The case at bar, however, involves the enforcement of a tax statute of the State and the powers and duties of the State commissioner of revenue under said law. It is a controversy that concerns not only the plaintiffs in the case and other dealers selling new automobiles at retail in the usual course of business but also the State and the public generally. On the filing of the petition an order to show cause was issued, directed to the defendant. It was considered by the court that the situation presented was of such character as to justify a test case in the form of a mandamus proceeding. The court was advised at the time by the attorney general that he had no objection to the issuance of the show-cause order. Such action was presumably based on the theory that

---

* This section was amended by Act No. 313, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3663–9; Stat. Ann. 1947 Cum. Supp. § 7.529).— REPORTER.

from the standpoint of public policy an early determination of the question should be obtained. The case has been submitted on the merits and we determine it accordingly. The procedural issue that defendant suggests is, we think, answered by the decisions of this Court in *Scott* v. *Secretary of State,* 202 Mich. 629, and *Leininger* v. *Secretary of State,* 316 Mich. 644.

The suggestion made in plaintiffs' brief that the enforcement of the amended rule and regulation as adopted by the defendant will lead to administrative difficulties in the enforcement of the act may not properly be considered in construing the statutory provision here involved, which, as above stated, is clear and unambiguous. The suggested condition, if it arises, will be the result of the enforcement of the law as enacted by the legislature. In other words, the argument should be addressed to the legislature rather than to the court. It may well be questioned, however, that the anticipated confusion will result if taxpayers under the act undertake in good faith to comply with the requirements imposed. It must be assumed that they will do so. It is the duty of the defendant to enforce the statute as enacted. Questions of fact presented to him in the course of the performance of such duties must be determined on the basis of competent proof. *Kneeland* v. *Wood,* 117 Mich. 174; *Smith* v. *Grand Rapids City Commission,* 281 Mich. 235; *Palmer* v. *State Land Office Board,* 304 Mich. 628. In view of the necessity for proceeding in the manner indicated, it is apparent that the statute as herein construed does not vest arbitrary power in the defendant. The constitutional questions raised by plaintiffs in this connection are not well founded.

For the reasons above stated in the discussion of the merits of the case, the writ of mandamus is de-

nied. In view of the nature of the questions involved, no costs are allowed.

BUSHNELL, C. J., and SHARPE, REID, NORTH, and BUTZEL, JJ., concurred with CARR, J.

BOYLES, J. (*concurring*). I concur in part, but disagree as to the effect of Justice CARR's opinion on overruling the *Montgomery Ward Case.* In *Montgomery Ward & Co., Inc.,* v. *Fry,* 277 Mich. 260, this Court, at pages 270, 271, held as follows:

"Count Five.

"Count five seeks computation of the sales tax in case of sales at retail, partly in cash and partly in used merchandise, upon the sum of money paid and the actual market value and not the credit arbitrarily allowed for second-hand articles.

"Plaintiff appeals from a holding that the gross proceeds of such a sale is the sum of money received, plus the amount allowed the purchaser for such used article.

"The gross proceeds of such a sale constitutes the price fixed at the sale, paid in money in part and second-hand articles accepted at an arbitrary figure by the seller. The loss, if any, in such transactions, *as well as the profit, if any,* is that of the plaintiff without any share therein by the State.

"In the circuit court plaintiff did not recover for this item and the judgment thereon is affirmed."

Mr. Justice CARR writes that the above underscored provision, relating to the situation where the sales tax payer realizes more than the agreed price at which the secondhand article was taken in, is dictum. To that extent at least the *Montgomery Ward Case* is overruled.

I can see no room in the statute under consideration for construing it to be binding upon the taxpayer where he ultimately receives *less* than the agreed price allowed for the secondhand article tak-

en in exchange, but as held by Mr. Justice Carr not binding where he ultimately receives *more* than such agreed price. If the *Montgomery Ward Case* erroneously construes this statute, by holding that the computation of the .sales tax is based on the credit arbitrarily allowed and agreed upon for the second-hand article, instead of on the gain or loss value of the secondhand article, and we should agree with Mr. Justice Carr that it should be computed upon the actual gain value of the secondhand article instead of the amount agreed upon for which it was taken in, then the holding under "Count Five" in the *Montgomery Ward Case* should be considered as overruled *in toto,* and not merely overruled where the sales tax payer receives *more* instead of *less* money for such secondhand article. This is not a one-way statute and it should operate for as well as against the taxpayer when circumstances warrant.

Therefore I conclude that what was said in *Montgomery Ward & Co., Inc.,* v. *Fry, supra,* at pages 270, 271, referring to "Count Five" should be considered as overruled.

The question then arises whether what this Court said at page 398 in the recent case of *Gentzler* v. *Constantine Village Clerk,* 320 Mich. 394, applies to the case at bar. In the above case, on April 5th of this year, we said:

" 'The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law. To this the courts have established the exception that where a constitutional or statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them

impaired, by a change of construction made by a subsequent decision.' 14 Am. Jur. p. 345."

For a case applying the above principles of law in an action by a sales tax payer to recover sales taxes, see *Metzen* v. *Department of Revenue,* 310 Mich. 622. I conclude that we should overrule the *Montgomery Ward Case* in so far as reference therein is made to count five of the declaration. But I find nothing in the record before us to warrant a conclusion that the overruling of said decision to that extent results in the invalidation of any contracts or the impairment of any vested rights acquired under them. Hence I feel that overruling the *Montgomery Ward Case* to the extent indicated is retrospective in operation as applied to this case, and not merely limited in effect as of this date.

Except as stated herein, I concur in the opinion written by Mr. Justice CARR.

DETHMERS, J. (*dissenting*). It is my view that this case is controlled by decision in *Montgomery Ward & Co., Inc.,* v. *Fry,* 277 Mich. 260; that the very ably written opinion of Mr. Justice CARR, if adopted by the Court, would serve, in effect, to overrule that case.

To say that the *Montgomery Ward Case* holds that the term "gross proceeds," as used in the sales tax act, means "the price fixed at the sale," paid partly in money and partly with the credit arbitrarily allowed on the trade-in, only in those cases in which the allowed credit is equal to or more than the actual market value of the trade-in, is to heed the result achieved, on the particular facts before the Court, but to disregard the construction placed upon the statute by which, alone, that result was reached.

There is not the slightest suggestion in this Court's opinion in the *Montgomery Ward Case* that deci-

sion was predicated upon the proposition that the taxpayer should be deemed to be bound, for tax purposes, by the credit he had arbitrarily allowed on the trade-in if that exceeded its actual market value Neither is it mentioned in the opinion that the tax-payer was contending for a figure representing the market value of the trade-in at the time of its subsequent resale rather than at the time it was taken in trade, it not appearing that the value had fluctuated in the interim. On the contrary, the opinion clearly states that the controlling question in the case was whether the tax should be computed upon the "actual market value" of, or the "credit arbitrarily allowed" for, the trade-in. This Court thereupon proceeded to define the term "gross proceeds," upon which the tax is computed under the act, as meaning the money paid plus the credit arbitrarily allowed for the trade-in. That definition was the sole basis for decision. In fact, it constituted the decision and led inevitably to the statement in the opinion that "the loss, if any, in such transactions, as well as the profit, if any, is that of the plaintiff without any share therein by the State." The fact that there was loss and not profit on the resale of the trade-ins in that case does not render the words "as well as the profit, if any," mere dicta, but, rather, they give expression to the corollary to the proposition that the loss, if any, is the plaintiff's,—a corollary inescapable in view of the construction placed by this Court upon the term "gross proceeds," upon which decision turned.

The sales tax is computed, under the act, on the basis of "gross proceeds." The controlling question in the instant case is, as it was in the *Montgomery Ward Case,* what does the term "gross proceeds" mean in cases where the consideration paid for a new article is part money and part trade-in. Persuasive, indeed, is Mr. Justice CARR's reasoning in

support of his conclusion that the term "gross proceeds," as defined in the original 1933 enactment, means purchase money paid, together with the market value of the trade-in rather than the amount arbitrarily allowed as a credit for the trade-in. However, in the *Montgomery Ward Case* this Court construed the term contrariwise. Are we at liberty now to overrule that case?

. The sales tax act was enacted in 1933 (Act No. 167). The *Montgomery Ward Case* construing the term "gross proceeds" as defined in section 1 of that act, was decided on October 5, 1936. Thereafter section 1 of the act was re-enacted by way of amendment by Act No. 313, Pub. Acts 1939, and Act No. 59, Pub. Acts 1941. The re-enactments left the definition of "gross proceeds" of the 1933 act unchanged as applied to original sales. In *People* v. *Lowell,* 250 Mich. 349, in speaking of the effect of the re-enactment of a statutory provision by way of amendment, this Court said:      .

"The old section is deemed stricken from the law, and the provisions carried over have their force from the new act, not from the former. 1 Lewis' Sutherland Statutory Construction (2d Ed.), § 237."

When the legislature in the years 1939 and 1941 re-enacted by way of amendment the definition of "gross proceeds" contained in the original 1933 enactment it must be presumed to have known the construction placed upon that definition by this Court in the *Montgomery Ward Case* in 1936 and to have adopted that construction in the re-enactments, which is, therefore, now binding upon this Court.

"It seems that, where a statute is re-enacted which has received a construction by the Supreme Court, such construction becomes a part of the new law." *McEvoy* v. *City of Sault Ste. Marie* (syllabus 6), 136 Mich. 172.

"It is the duty of the courts when construing a statute to ascertain and give effect to the legislative intent. When enacting the present law or amending it, the legislature might easily have provided otherwise. No such action having been taken, we must assume that it was content with the construction which had been placed on the similar provisions of the former act." *Gwitt* v. *Foss,* 230 Mich. 8.

"The reasoning of this Court and its interpretation of the various provisions of the act since its original enactment in the year 1912 does not require the application of the art of apologetics or the skill of an apologist. We may, on the other hand, properly indulge in the judicial assumption that the legislature has been content with that interpretation, else it would have long since exercised its independent prerogative to restate the limitation of this field of the provisions of the act." *Twork* v. *Munising Paper Co.,* 275 Mich. 174.

"Since it may be presumed that the legislature knew a construction, long acquiesced in, which had been given by the courts to a statute re-enacted by the legislature, there is a presumption of an intention to adopt the construction as well as the language of the prior enactment. It is accordingly a settled rule of statutory construction that when a statute or a clause or provision thereof has been construed by a court of last resort, and the same is substantially re-enacted, the legislature may be regarded as adopting such construction. *The rule has been applied even where the construction placed upon the statute was unnecessary to a determination of the question involved in the case."* 50 Am. Jur., Statutes, p. 461, § 442.

"The general rule of statutory construction that when a statute, or a clause or provision thereof, has received a judicial construction, and the same is substantially re-enacted, the legislature may be regarded as adopting such construction, is persuasive,

and in some cases is even regarded as *binding upon the courts.*" 50 Am. Jur., Statutes, p. 462, § 443.

"Where a statute that has been construed by the courts of last resort has been re-enacted in same, or substantially the same, terms, the legislature is presumed to have been familiar with its construction, and to have adopted it as a part of the law, unless a contrary intent clearly appears, or a different construction is expressly provided for." 59 C.J. p. 1061, § 625.

See, also, *Heald* v. *District of Columbia,* 254 U.S. 20 (41 Sup. Ct. 42, 65 L. Ed. 106) and voluminous notes thereunder in the Lawyers' Edition citing a host of authorities in support of the proposition that:

"The rule seems to be well settled that the re-enactment in the same or substantially the same terms, of a statute which has received a judicial construction, amounts to a legislative adoption of such construction."

It must be presumed that, in the re-enactment, the legislature adopted the construction given the term "gross proceeds" in the *Montgomery Ward Case* or it would have changed the words or clearly expressed an intent to the contrary. See *Barnewall* v. *Murrell,* 108 Ala. 366 (18 South. 831); *Copper Queen Consolidated Mining Co.* v. *Territorial Board of Equalization of the Territory of Arizona,* 206 U.S. 474 (27 Sup. Ct. 695, 51 L. Ed. 1143).

In the case of *Swift & Co.* v. *Wood,* 103 Va. 494 (49 S.E. 643), the supreme court of Virginia said:

"When a statute has been construed by the courts, and is then re-enacted by the legislature, the construction given to it is presumed to be sanctioned by the legislature, *and thenceforth becomes obligatory upon the courts. Mangus* v. *McClelland,* 93 Va. 786 (22 S.E. 364)."

To the same effect the supreme court of Alabama in *Merchants National Bank of Mobile* v. *Hubbard,* 222 Ala. 518 (133 South. 723, 74 A.L.R. 646), said:

"We think when a construction of a code section has been deliberately announced, when directly involved, and has stood without change for many years, and in the meantime the code section thus construed has been readopted without change, *we are bound by such construction* of it until the legislature makes a change."

The supreme court of Indiana in the case of *Barr* v. *Sumner,* 183 Ind. 402 (107 N.E. 675, 109 N.E. 193), said:

"The decisions of the question are uniform and consistent and cover a period of more than half a century during which the statute in relation to the submission of interrogatories has been twice reenacted. Section 546, R.S. 1881, Acts 1881 (s.s.), p. 240; section 572, Burns 1914, Acts 1897, p. 128. The re-enactments, under the circumstances, adopted the previous constructions of the act by this court. *State* v. *Ensley* (1912), 177 Ind. 483 (97 N.E. 113, Ann. Cas. 1914D, 1306). *Were we of the opinion that all those consistent decisions are erroneous we would be without rightful authority to overrule them,* because this court is vested with no legislative power."

Inasmuch as it must be held that the construction placed by this Court, in the *Montgomery Ward Case,* upon the definition of "gross proceeds," contained in section 1 of the 1933 act, was adopted by the legislature in the 1939 and 1941 re-enactments, I deem the conclusion inescapable that we are bound by that construction until such time as the legislature may, by legislative enactment, express a clear intent to the contrary. It is not for us to legislate.

If necessary, a writ should issue as prayed, without costs, a public question being involved.